# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON

**STEVEN JAMES LITTLE,**

      **Plaintiff,**

**v.**                                               **Case No. 3:16-cv-08301**

**ERIC MUSICK, Correctional Officer,**
**WESTERN REGIONAL JAIL**
**CORRECTIONAL OFFICER DAMRON,**
**CORRECTIONAL OFFICER WILLIAMSON,**
**CORPORAL DIAMOND, 5**
**CORRECTIONAL OFFICER ADKINS,**
**CORRECTIONAL OFFICER AKERS,**
**CORRECTIONAL OFFICER SPARKS,**
**CORRECTIONAL OFFICER WILLIAM RACER,**
**CORRECTIONAL OFFICER MARTIN,**
**CORRECTIONAL OFFICER PEDACRUE, and**
**PRIMECARE MEDICAL INC.,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Robert C. Chambers, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are three Motions to Dismiss (ECF Nos. 39, 41 and 46), which will be discussed in turn.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter is proceeding on the plaintiff's Amended Complaint (ECF No. 6), as further amended with respect to a request for monetary relief as stated in the "Second Amended Complaint" contained in ECF No. 67. The plaintiff alleges that, on July 23,

2016, he was "lifted off the ground and slammed to the concrete" by defendant Eric Musick, a Correctional Officer at the Western Regional Jail. (ECF No. 6 at 7). The plaintiff alleges that he was a victim of excessive force at the hands of Musick because he "was walking to medical when I was slam[m]ed. I was not doing anything aggressive, just talking to CO Music[k] about another incident that happened earlier that day. I don't know why he felt the need to put his hands on me." (*Id.* at 9).

The plaintiff further claims that, following this incident, X-rays were taken by PrimeCare Medical staff at the facility, which were negative for any broken bones; however, the plaintiff complained that he continued to suffer from back pain, but was told that there was nothing more that could be done for his condition. (*Id.*) His Amended Complaint states, "PrimeCare Medical has refused any further care that would include going to an actual hospital for MRI." (*Id.*) Finally, the plaintiff claims that, between July 27, 2016 and August 12, 2016, he was denied outdoor recreation time by the other correctional officers named in the Amended Complaint. (*Id.* at 8). The plaintiff seeks additional medical evaluation and treatment and monetary compensation for the injuries he suffered as a result of the incident with defendant Musick, as well as for the 17 days he was denied recreation. (ECF No. 6 at 4; ECF No. 67 at 1).

On November 15, 2016, PrimeCare Medical, Inc. (hereinafter "PrimeCare") filed a Motion to Dismiss (ECF No. 39) asserting that the plaintiff failed to exhaust the required administrative remedies, failed to comply with the requirements of the West Virginia Medical Professional Liability Act, and that the Amended Complaint fails to state a plausible claim under 42 U.S.C. § 1983 against PrimeCare. Also on November 15, 2016, the Western Regional Jail, and Correctional Officers Williamson, Diamond, Akers, Racer, and Martin (hereinafter "the Regional Jail defendants") filed a Motion to Dismiss (ECF

No. 41), asserting that, for various reasons the Amended Complaint fails to state a plausible claim against any of those defendants. The Regional Jail defendants subsequently filed an Amended Memorandum of Law (ECF No. 68), in which they further assert that the plaintiff failed to exhaust the required administrative remedies concerning the plaintiff's claims against them. Then, on November 16, 2016, Eric Musick filed a Motion to Dismiss (ECF No. 46) which asserts only that the plaintiff failed to exhaust his administrative remedies concerning his excessive force claim against Musick.

On November 29, 2015, the plaintiff filed a Response in Opposition to the defendants' Motions to Dismiss (ECF No. 51). On December 6, 2016, defendant Musick and the Regional Jail defendants filed reply briefs. (ECF No. 52, 53). The plaintiff filed Additional Responses (which are unauthorized sur-replies) on December 16, 2016. (ECF Nos. 54, 55). The undersigned will address these briefs in greater detail as necessary *infra*. These motions are ripe for resolution.

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual allegations
> in the complaint as true, we "are not bound to accept as true a legal
> conclusion couched as a factual allegation" (internal quotation marks
> omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff
> armed with nothing more than conclusions. Second, only a complaint that
> states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. *
> * *
>
> In keeping with these principles a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a complaint, they
> must be supported by factual allegations. When there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

## ANALYSIS

### A.    The plaintiff failed to exhaust his administrative remedies prior to filing his Complaint.

All of the defendants assert that this civil action must be dismissed because the

plaintiff failed to exhaust the available administrative remedies prior to filing this suit.

The undersigned will address this threshold issue before turning to other grounds for

dismissal raised by each defendant.

PrimeCare's Memorandum of Law addresses the requirements of the West

Virginia Prison Litigation Reform Act ("WVPLRA"), contained in West Virginia Code §

25-1A-2, mandating that an inmate "may not bring a civil action regarding an ordinary

administrative remedy until the procedures promulgated by the agency have been

exhausted." W. Va. Code § 25-1A-2(c). (ECF No. 40 at 4-6). PrimeCare's Memorandum of Law further asserts that "an ordinary administrative remedy" includes complaints concerning health care. (*Id.* at 4-5) (citing W. Va. Code § 25-1A-2(a)). (*Id.* at 5).

The Western Regional Jail, where the plaintiff is incarcerated, is a facility operated by the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA"). As noted by PrimeCare, the United States District Court for the Northern District of West Virginia has summarized the WVRJCFA's grievance process as follows:

> Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

*Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D. W. Va. Oct. 16, 2012) (Kaull,

M.J.), *report and recommendation adopted*, No. 1:11CV108, 2012 WL 5845219 (N.D. W.

Va. Nov. 19, 2012) (Keeley, J).  (*Id.* at 5-6).  PrimeCare emphasizes that "administrative

remedies are not exhausted until all three steps of the grievance process have been

completed."  (*Id.* at 6).  PrimeCare's Memorandum of Law further asserts that, although

the plaintiff claimed that he did present the facts relating to his claims in the grievance

process, he presents nothing more than a statement that he "went to the medical facility

[and] was X-rayed of my back."  (*Id.*)  Thus, PrimeCare maintains that the plaintiff failed

to actually exhaust the mandatory grievance procedures.  (*Id.*)

       The Memoranda of Law filed by defendant Musick and the other Regional Jail

defendants further recognize that section 1997e(a) of the federal Prison Litigation Reform

Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires exhaustion of available

administrative remedies before an action may be filed under 42 U.S.C. § 1983, is also

applicable to the plaintiff's federal constitutional claims.  They, too, assert that the

plaintiff failed to properly exhaust the available administrative remedies with respect to

the claims brought against them.

       Noting that the plaintiff had attached two grievances to his Amended Complaint,

Musick's Memorandum of Law addresses the exhaustion issue as follows:

> One of the vague grievance forms submitted by Plaintiff does reference
> Defendant Musick.  [ECF No. 6 at 11].  However, in that grievance form,
> Plaintiff states that his actual complaint relates to inadequate medical
> attention.  (*Id.*) * * * No specific grievance was lodged as to Defendant
> Musick' alleged conduct.  A mere reference to Defendant Musick in one
> grievance form and the paltry explanation of the steps Plaintiff took to
> complete the grievance process confirm that he has not exhausted all
> administrative remedies.

(ECF No. 47 at 4).

The plaintiff did attach two grievances to his Amended Complaint. The first, dated August 11, 2016, stated "I was hurt during an altercation with CO Music. Grievance because medical attention was inadequet [sic; inadequate]. X-rays only shows bone. I am still hurt." (ECF No. 6 at 11). This copy of the grievance contains no response. (*Id.*) The second grievance, which is dated September 8, 2016, is addressed to Warden Crawford and states as follows:

> I was hurt and sent for X-rays followed up with a doctor who said I have muscular contusions yet he did not examine my body. I believe I have severe nerve damage from officers at this jail and need further medical attention.

(*Id.* at 12). The copy of this grievance also contains no response. (*Id.*)

Because the status of the plaintiff's attempts to exhaust his administrative remedies was unclear from the face of the Complaint and motion documents, the undersigned conducted a motions hearing and status conference in this matter on July 27, 2017. During the hearing, the undersigned directed counsel for the Regional Jail defendants to produce all grievances filed by the plaintiff between July 23, 2016 (the date of the alleged incident with defendant Musick) and August 29, 2016 (the date that the plaintiff filed his initial Complaint), and any responses thereto.

On August 7, 2017, counsel filed the responsive grievance documents. (ECF No. 69). The documents produced include the August 11, 2016 grievance discussed above, with a response thereto dated August 16, 2016, stating, "Spoke with Medical (Hatfield) X-rays were taken "Negative" was seen by facility doctor. Inmate will be placed back on Dr. call list again to re-check." (*Id.* at 2). The remaining six pages of documents consist of a printout of electronic inmate grievances or requests. Only one of those requests appears to concern the July 23, 2016 incident. It states "I was hurt during an officer's assistance."

(*Id.* at 1).  The printout further suggests that the plaintiff was "seen by a doctor on July 25" and that the grievance was filed and accepted on July 31, 2016, was forwarded to Capt. Aldridge, and was presented to Administrator Crawford on August 2, 2016.  However, there is no evidence that either of these grievances were appealed beyond the Administrator level.  Additionally, there is no evidence that the plaintiff ever presented the issue of denial of outdoor recreation in any grievance during the operative time period. The undersigned will address the exhaustion defense as to each defendant in light of this information.

<u>Eric Musick</u>

Although it appears that the plaintiff filed a grievance on August 11, 2016 that mentions his altercation with defendant Musick, the grievance fails to make any detailed complaints about Musick's conduct and fails to seek any relief with respect thereto. Rather, the grievance is focused on allegedly inadequate medical treatment following the incident.  Moreover, although the grievance contains an initial response from the Administrator, there is no documentation to indicate that the grievance was properly appealed through the other two levels of the grievance process to the Chief of Operations and the Executive Director.

Therefore, even if the court were to liberally construe this grievance as addressing the conduct of defendant Musick, it is apparent that the plaintiff failed to properly exhaust the administrative remedies concerning this grievance.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to properly exhaust the available administrative remedies concerning the plaintiff's claim against Eric Musick.

## PrimeCare

The same grievance document demonstrates that the plaintiff failed to properly exhaust the grievance process concerning inadequate medical treatment against PrimeCare. Additionally, there are no other grievance documents filed between July 23, 2016 and August 29, 2016 that demonstrate the complete exhaustion of the grievance process with respect to the plaintiff's medical treatment as a result of this incident. Therefore, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff also failed to properly exhaust the available administrative remedies with respect to his claims against PrimeCare.

## Regional Jail Defendants

Based upon the grievance documents filed with the court, it is also apparent that, between July 23, 2016 and August 29, 2016, the plaintiff failed to file any grievances with respect to the denial of outdoor recreation, which is the sole claim brought against the remaining Regional Jail defendants. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to exhaust the available administrative remedies with respect to his claims against defendants Williamson, Diamond, Akers, Racer and Martin (who filed the Motion to Dismiss), as well as defendants Damron, Adkins, Sparks and Pedacrue, who have not been served with process, but who would be equally subject to dismissal on this basis.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to exhaust his administrative remedies concerning all of his claims before filing his Complaint and, therefore, dismissal of this civil action, in its entirety, is required on that basis.

Nevertheless, should the presiding District Judge disagree with the undersigned's exhaustion analysis, the undersigned will address the other grounds for dismissal raised by each defendant.[1]

## B.     PrimeCare Medical, Inc.'s other grounds for dismissal.

### The plaintiff failed to comply with the MPLA

PrimeCare further asserts that, to the extent that the plaintiff is claiming negligence in the medical care rendered to him by PrimeCare personnel, his cause of action is governed by the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.*, specifically, W. Va. Code § 55-7B-6(b), requiring pre-suit notification and a screening certificate of merit. *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006). As noted in PrimeCare's Memorandum of Law, West Virginia Code § 55-7B-6 provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

> (b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider*, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and *shall* state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A *separate screening*

---

[1] Defendant Musick did not assert any other grounds for dismissal in his motion, and he filed an Amended Answer to the Amended Complaint (ECF No. 44) on November 16, 2016.

> *certificate of merit must be provided* for each health care provider against
> whom a claim is asserted. The person signing the screening certificate of
> merit shall have no financial interest in the underlying claim, but may
> participate as an expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6 (emphasis added in PrimeCare's brief). (ECF No. 40 at 6-7).

The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). As recently noted by the Supreme Court of Appeals of West Virginia, "[w]here the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e), the Act applies regardless of how the claims have been pled." *Minnich v. MedExpress Urgent Care, Inc.-West Virginia*, 796 S.E.2d 642, 646 (2017) (quoting *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 453 (2007)).

PrimeCare further asserts, "[n]owhere in his Amended Complaint does the plaintiff allege compliance with the mandatory notice and screening certificate of merit requirements of the MPLA." (ECF No. 40 at 7). PrimeCare further asserts that these requirements have been determined to be mandatory for medical malpractice or negligence claims filed in federal courts. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services*, Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision). (*Id.* at 7-8).

The plaintiff has not disputed either the applicability of the MPLA to his case or his failure to comply with the MPLA requirements. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that dismissal of the plaintiff's allegations of medical negligence in the Amended Complaint is required because the plaintiff failed to meet the requirements of the MPLA, which clearly appear to apply to his negligence claims.

<u>No plausible federal constitutional claim against PrimeCare</u>

PrimeCare has also moved to dismiss the plaintiff's Amended Complaint on the basis that it fails to state a plausible claim of deliberate indifference to a serious medical need against PrimeCare and its personnel. The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a <u>person</u> acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

As the plaintiff was a pre-trial detainee, and not a convicted prisoner, at the time in question, his constitutional claim concerning inadequate medical treatment arises, if at all, under the due process clause of the Fourteenth Amendment, and not under the Eighth Amendment prohibition against cruel and unusual punishment, as asserted by PrimeCare. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992). However, the inquiry under both amendments is essentially analogous: whether the defendant exhibited deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), *overruled on other grounds by* Wilkins *v. Gaddy*, 559 U.S. 34 (2010). Thus, courts often rely upon Eighth Amendment precedent when analyzing such claims by pre-trial detainees.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

Because PrimeCare is the contracted medical provider for the WVRJCFA, a state agency, the deliberate indifference standard is applicable to the conduct of both PrimeCare and its individual employees, who may be considered to be acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1998). Although PrimeCare has argued that it is not a "person" under section 1983 (ECF No. 40 at 9), the Fourth Circuit and other federal courts have held that "[a] private corporation is liable under § 1983 . . . when an official policy or custom causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Motto v. Corr. Med. Servs.,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.,* Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D. W. Va., Dec. 18, 2008) (Faber, J. (unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

The plaintiff has not named any individual PrimeCare employees as defendants, and he has not pled any allegations concerning such a policy or custom with regard to the conduct of PrimeCare Medical, Inc. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a plausible deliberate indifference claim against PrimeCare Medical, Inc. and that the plaintiff's claims against it should be dismissed for failure to state a claim upon which relief can be granted.

Nevertheless, PrimeCare's Memorandum of Law further asserts that the plaintiff's Amended Complaint neither pleads nor meets the legal threshold for a viable deliberate indifference claim. (ECF No. 40 at 10-11). In order to state a cognizable claim, an inmate must demonstrate the existence of a medical condition or need that is objectively serious.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   A medical condition is serious under the Eighth Amendment when it has been "diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would understand that medical attention is necessary."  *Gaudreault v. Municipality of Salem, Mass.*, 293 F.2d 203, 208 (1st Cir. 1990).

The inmate must also show that a particular defendant subjectively responded with deliberate indifference to the inmate's serious medical need.  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).  Negligence is insufficient to state a federal constitutional claim.  *See Wilson*, 501 U.S. at 305.  Thus, a constitutional violation does not occur unless the medical provider's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 843, 851 (4th Cir. 1990).  Further, a mere disagreement between the inmate and the health care provider over the type or extent of medical care is insufficient to establish deliberate indifference.  Moreover, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary.  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).  In light of these factors, PrimeCare's Memorandum of Law asserts that:

> This case is about nothing more than a disagreement between Plaintiff Little and PrimeCare medical personnel over the type and extent of treatment he received for the injury he sustained to his back.  Failure to order an MRI following negative X-ray results is not a violation of Little's constitutional rights.

(*Id.* at 11).

The Amended Complaint does not allege any specific conduct by an identified PrimeCare employee that rises to the level of deliberate indifference to a serious medical need.  Rather, the plaintiff simply alleges that "they said there was nothing more they

would do for my condition" and "PrimeCare Medical has refused any further care that would include going to an actual hospital for MRI." (ECF No. 6 at 9). Moreover, in one of the plaintiff's subsequent sur-replies, he acknowledges a "disagreement with Dr. Fuller and another Dr." concerning the need for further treatment. (ECF No. 55).

Even with the liberal construction afforded to the plaintiff, such allegations are too threadbare to establish any plausible constitutional claim. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a claim upon which relief can be granted against PrimeCare or its personnel.

### C. The Regional Jail defendants' other grounds for dismissal.

<u>The Regional Jail defendants in their official capacities are not persons under section 1983 and all official capacity claims are barred by sovereign immunity</u>

As noted above, to succeed with a claim brought under section 1983, a plaintiff must allege both a violation of a right secured by the Constitution or laws of the United States and that a person acting under color of state law committed the alleged violation. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). In their Amended Memorandum of Law, the Regional Jail defendants first assert that, as an arm of the State of West Virginia, the Western Regional Jail is not a "person" suable under section 1983.

> The Western Regional Jail is nothing more than a facility operated and controlled by the West Virginia Regional Jail and Correctional Facility Authority pursuant to West Virginia Code § 31-20-1a *et seq.* As a facility operated by the West Virginia Regional Jail and Correctional Facility Authority, the Western Regional Jail has no separate existence and is entitled to the same immunity.

(ECF No. 68 at 5) (citing *Roach v. Burch*, 825 F. Supp. 116 (N.D. W.Va. June 28, 1993), in which the court found that the WVRJCFA is an "arm" or "alter ego" of the State and not a "person" for purposes of a claim for money damages under section 1983).

Additionally, the Amended Complaint does not specify whether the plaintiff is suing the individual defendants in their official or personal capacities, or both. Nevertheless, to the extent that the plaintiff seeks to sue the individual defendants in their official capacities, any claims for monetary damages cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed. [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). ). Absent waiver or consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Congress did not waive

this sovereign immunity when it enacted section 1983 and the State of West Virginia has not consented to suit thereunder.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that all of the Regional Jail defendants are immune from liability for monetary damages in their official capacities under the Eleventh Amendment and, in their official capacities, are not persons who can be sued under 42 U.S.C. § 1983. Accordingly, such claims must be dismissed.

No plausible claim against Regional Jail defendants

The plaintiff's Complaint alleges that these defendants denied him outdoor recreational time over a period of 17 days. Again, because the plaintiff was a pre-trial detainee, this claim must be addressed under the due process clause of the Fourteenth Amendment. *Bell*, *supra*, 441 U.S. at 535 n.16. Under the Due Process Clause of the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 536. However, as noted by the Regional Jail defendants, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (10th Cir. 2014) (citing *Bell*, 441 U.S. at 537). (ECF No. 68 at 7). The Regional Jail defendants assert that "[o]nly government conduct that shocks the conscience is actionable as a violation of the Fourteenth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). (ECF No. 68 at 7).

Again, courts analyzing such claims borrow from the rationale applied in Eighth Amendment cases because "[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth

18

Amendment." *Young*, 238 F.3d at 575. Thus, to state a plausible claim, the plaintiff must demonstrate (1) a serious deprivation or injury, measured under an objective standard; and (2) a culpable state of mind by the defendant, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 198 (1991). Only extreme deprivations will suffice, and it is the plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Strickler v. Waters*, 989 F.2d 1375, 1379–81 (4th Cir. 1993). Additionally, the plaintiff must allege facts sufficient to show that the defendants were deliberately indifferent; that is, that they knew of facts from which an inference could be drawn that a "substantial risk of serious harm," was posed to the plaintiff's health and safety, that they drew that inference, and then disregarded the risk posed. *Farmer*, 511 U.S. at 837.

The Regional Jail defendants assert that "[w]ith regard to a lack of recreation, 'an inmate must show **specific harm** resulting from the deprivation and a **complete denial for an extended period of time**.'" *Morton v. Sheeley*, 2014 WL 3700011, *22 (N.D. W. Va. July 24, 2014) (emphasis added by defendants). (ECF No. 68 at 7). They further contend that "[c]ourts 'must look at the totality of the circumstances, including the extent to which the restrictions adversely affect the mental or physical health of the inmates.'" *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980); *see also Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir. 1976); *Sweet v. South Carolina Dept. of Corr.*, 529 F.2d 854, 865 (4th Cir. 1975). (*Id.* at 7-8).

Courts should also look at the "overall duration of incarceration, the length of time for which prisoners are locked in their cell each day, . . . and the practical opportunities

for the institution to provide prisoners with increased exercise opportunities." *Dawson v. Kendrick*, 527 F. Supp. 1252, 1300 (S.D. W. Va. 1981). (*Id.* at 8). The defendants emphasize, however, that the Fourth Circuit has held that a temporary denial of outdoor exercise is generally "not the kind of extraordinary case of a palpable deprivation of the minimal requirements of civilized existence in which an inference of serious injury might be reasonable." *Strickler*, 989 F.2d at 1381. (*Id.*)

The Regional Jail defendants assert that the plaintiff's vague and conclusory allegation that he was denied outdoor recreation for 17 days is insufficient to establish a plausible constitutional violation. As noted in their Memorandum of Law, the Fourth Circuit and other federal circuit courts have held that much longer periods of deprivation are not sufficiently serious to rise to such a level. *Clay v. Miller*, 626 F.2d 345 (4th Cir. 1980) (denial of exercise opportunities for more than 30 days did not violate constitutional standards for pre-trial and post-conviction detainees); *see also Thomas v. Ramos*, 130 F.3d 754 (7th Cir. 1997) (denial of outdoor recreation for 70 days was permissible); *Knight v. Armontrout*, 878 F.2d 1093 (8th Cir. 1989) (denial of recreation for 13 days permissible); *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988) (denial of recreation time for 24 days permissible). (*Id.* at 8-9).

Additionally, the defendants note that the plaintiff has not alleged that he suffered any actual injury from this denial of outdoor recreation. *See, e.g., Tracey v. McKie*, 2013 U.S. Dist. LEXIS 85413 (D.S.C. Apr. 2, 2013) (summary judgment granted where plaintiff did not allege injury due to lack of recreation and exercise); *Pounds v. Newhart*, No. 1:12-cv-00256, 2012 WL 859555 (E.D. Va. Mar. 13, 2012) (failure to allege that the challenged restriction caused actual injury fails to state constitutional violation); *Joyce v. Thomas*, No. 7:07-cv-00198, 2007 WL 1447902 (W.D. Va. May 14, 2007) (denial of access to

outdoor recreation for three months without any allegation of actual injury or harm failed to state plausible claim for relief).  The defendants, likewise, contend that that the plaintiff has not alleged a sufficiently culpable state of mind by any of these defendants in denying him recreation.  (*Id.* at 10).  Their Memorandum of Law assert that the plaintiff "merely claims that each of these Defendants denied him outdoor recreation for one or two days without any demand for relief."  (*Id.*)  Accordingly, the Regional Jail defendants contend that the Amended Complaint fails to state a plausible constitutional claim against them and that they are entitled to qualified immunity and dismissal of the claims against them.  (*Id.* at 10-13).

The plaintiff's initial Response simply stated that the Regional Jail defendants should not be dismissed because they will be witnesses in this matter.  (ECF No. 51 at 2).  However, one of his sur-replies attempts to salvage his claims against the Regional Jail defendants by asserting that the correctional officers who denied him outdoor recreation failed to comply with the "WRJ Handbook," which provides that all inmates be provided with opportunities for at least one hour of access to "outdoor recreation exercise room" and that such privileges are not to be revoked for disciplinary reasons until after a disciplinary hearing has been held.  (ECF No. 54 at 1).  However, these allegations do not appear to overcome the authority cited by the defendants demonstrating the implausibility of the plaintiff's claim.

The plaintiff's Amended Complaint fails to allege any serious injury or harm as a result of the alleged deprivation of outdoor recreation for a period of 17 days.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a plausible claim for relief against the Western Regional Jail or any of the individual Regional Jail defendants named therein.  Accordingly, the

undersigned further proposes that those defendants, whether or not they have been served with process, are entitled to dismissal as defendants herein.

**RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** PrimeCare Medical, Inc.'s Motion to Dismiss (ECF No. 39), the Regional Jail Defendants' Motion to Dismiss (ECF No. 41) and Eric Musick's Motion to Dismiss (ECF No. 46) and dismiss this civil action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1997e(a).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*,

727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Chief Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

August 10, 2017

_____
Dwane L. Tinsley
United States Magistrate Judge